# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

VICKY CARRERO and
MELISSA BLASIO, *individually and
on behalf of themselves
and all others similarly situated,*

    Plaintiffs,

vs.

BANK OF AMERICA, N.A.,
*a foreign corporation,*

    Defendant.

Case No. _____

**COLLECTIVE ACTION**

6:09-CV-862-012 L-35DAB

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, VICKY CARRERO (hereinafter, "Carrero") and MELISSA BLASIO (hereinafter, "Blasio") (collectively, Carrero and Blasio shall be referred to as "Named Plaintiffs"), individually and on behalf of themselves and all others similarly situated, by and through counsel, hereby sue the Defendant, BANK OF AMERICA, N.A. (hereinafter, "Bank of America" or "Defendant") and respectfully sets forth their Complaint and Demand for Jury Trial as follows:

### INTRODUCTION

1.    Named Plaintiffs bring this collective action on behalf of themselves and all others similarly situated against Defendant for unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, et seq.

2.     Individually, Carrero sues Defendant for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.* and defamation *per se* under Florida law.

3.     Individually, Blasio sues Defendant for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.* and defamation *per se* under Florida law.

### JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331; 29 U.S.C. § 201, *et seq.*; and 29 U.S.C. § 2611, *et seq.*

5.     In addition, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Named Plaintiffs' state law claims for defamation *per se* because such claims are derived from a common nucleus of operative facts as the Named Plaintiff's claims alleged under 29 U.S.C. § 2611, *et seq.*

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Moreover, under the provisions of 29 U.S.C. § 216(b), this Court has jurisdiction over this matter as it is an action brought by the Named Plaintiffs, on behalf of themselves and all other current and former similarly situated employees of Bank of America, as a collective action.

8.     This Court has subject matter jurisdiction in this matter, and venue is appropriate to this Court because many of the acts outlined herein occurred within the Middle District of Florida, Defendant conducts business within the Middle District of Florida, and because Named Plaintiffs each reside within the Middle District of Florida.

9.     Pursuant to Local Rule 1.02(b) of the Local Rules for the United States District Court for the Middle District of Florida, assignment to the Orlando Division is proper because each of the Named Plaintiffs resides in Orange County, Florida.

## PARTIES

### Defendant

10.     Bank of America is a foreign corporation which conducts business throughout the United States, including Orange County, Florida, where the Named Plaintiffs were employed by Defendant.

11.     Bank of America is an employer as defined by 29 U.S.C. § 203(d). The employer has employees subject to the provisions of 29 U.S.C. § 206.

12.     At all times relevant to this action, Bank of America was engaged in interstate commerce as defined by 29 U.S.C. §§ 206(a) and 207(a)(1).

13.     Alternatively, Bank of America is an enterprise engaged in interstate commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(r) and 203(s).

14.     At all times material hereto, Bank of America was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A)(i) and subject to the provisions of 29 U.S.C. § 2611, *et seq*.

### Carrero

15.     Carrero is a resident of Winter Garden, Orange County, Florida.

16.     Carrero was employed by Defendant, or its predecessors, from or about May 1999 until her termination in or about September 2008.

3

17.    Within the last three years of her employment with Defendant, Carrero was employed as a full-time non-exempt, hourly Personal Banker at Defendant's Rosemont Banking Center.

18.    During the last three years of her employment with Defendant, Carrero reported to Branch Manager Charles Phelps.

19.    Carrero, at all times material hereto, was an "employee" of Defendant within the meaning of the FMLA, 29 U.S.C. §§ 203(3) & 2611(3).

20.    During her employment with Defendant, Carrero sought and obtained leave under the FMLA from Defendant due to the serious health condition of her son, Nathan Cajina.

21.    From or about 2001 through the end of her employment with Defendant, Carrero routinely took FMLA leave every six months to care for her son's serious health condition.

22.    Due to the nature of her son's serious health condition, Carrero sometimes needed additional leave beyond that which is provided by the FMLA.

23.    To receive the additional time off to care for her son, Carrero was permitted by Charles Phelps to work unpaid hours in addition to her regular schedule for Defendant which would entitle her to "comp time."

24.    To receive "comp time," Carrero would generally work additional hours, either before or after her regular schedule, during lunch, or on Saturdays.

25.    Mr. Phelps, as Carrero's manager, was required to submit FMLA Intermittent/Reduced-Scheduled Leave Update Sheets to Metropolitan Life Insurance Company

on behalf of Carrero. These FMLA Intermittent/Reduced-Scheduled Leave Update Sheets were supposed to record the number of hours taken by Carrero for FMLA leave each week.

26.     When Carrero used her accrued "comp time" to take care of her son, Mr. Phelps would submit FMLA Intermittent/Reduced-Scheduled Leave Update Sheets which reflected 0 hours of FMLA leave.

27.     "Comp time" was permitted by Mr. Phelps for Carrero through or about the first quarter of 2008.

28.     During her employment with Defendant, Carrero routinely met or exceeded the goals which were set by her Branch Managers, including Charles Phelps.

29.     Within the last three years of her employment with Defendant, Carrero sought promotional opportunities both internally and externally of the Rosemont Banking Center.

30.     Specifically, Carrero petitioned Charles Phelps for the title and salary of Bank Officer at the Rosemont Banking Center.

31.     Despite achieving all goals set for her by Mr. Phelps and his promises to promote her if she achieved such goals, Mr. Phelps would not promote Carrero to Bank Officer.

32.     On or about January 30, 2007, after giving Carrero a formal performance assessment, he acknowledged in writing that he would provide her with the title and wages of a Bank Officer in July 2007 if she achieved certain goals in the 1st and 2nd quarters of 2007.

33.     After achieving her goals, Carrero sought the promotion promised to her by Charles Phelps.

34.  Mr. Phelps initially informed Carrero that he would not promote her. Moreover, Mr. Phelps encouraged Carrero to apply for other promotional opportunities outside of the Rosemont Banking Center.

35.  Eventually, in July 2007, after Carrero showed Mr. Phelps his promise in writing to promote her if she achieved certain goals, he gave her the title and promised wage increase.

36.  Even after he promoted Ms. Carrero, Mr. Phelps encouraged Ms. Carrero to seek employment opportunities outside of the Rosemont Banking Center.

37.  In or about June and December 2007, Carrero applied for two open Sales Support Associate positions within the Commercial Banking Department of Defendant's Downtown Orlando Banking Center.

38.  During interviews for each Sales Support Position, Carrero's prior use and need for FMLA leave was discussed at length.

39.  Despite being qualified for the Sales Support Positions, Carrero was not hired for either open position.

40.  In addition to seeking promotional opportunities via Defendant's formal postings, Carrero sought promotional opportunities via informal means as well.

41.  Specifically, Carrero contacted her former Branch Manager, John Schaefer, about transferring to and/or promotional opportunities at Mr. Schaefer's present branch location.

42.  Upon information and belief, Mr. Schaefer discussed Carrero's transfer/promotional request with his Assistant Branch Manager at the time, who, in turn,

informed Carrero that they could not employ Carrero because her "schedule" would be a problem.

43.     Despite being qualified for other work for Defendant, Defendant did not ever hire Carrero for any other position for which she applied.

44.     From or about June 30, 2008 through August 13, 2008, Carrero was on FMLA leave.

45.     When Carrero attempted to return to work, she was immediately placed on an administrative leave of absence by Defendant.  Defendant informed Carrero that she was being investigated for negotiating a check against a third-party account.

46.     On September 2, 2008, Defendant terminated Carrero's employment. Specifically, Carrero was terminated for allegedly violating company policy when she negotiated a check for a customer against a third-party account on or about June 24, 2008.

47.     Prior to her termination, it is believed that Carrero had no prior instances of discipline whether written or otherwise.

48.     Other employees such as Mr. Phelps and Maria Gonzalez were not terminated even though they engaged in violations of Company policies and procedure.

49.     For example, neither Mr. Phelps not Ms. Gonzalez were terminated when they engaged in a series of "cutting and pasting" of client signatures.

50.     Additionally, Mr. Phelps was not terminated even though he, among other things, had always approved of the actions for which Blasio and Carrero were terminated, cashed checks against third-party accounts, used Branch funds to credit accounts, improperly assigned matters to the Branch's general ledger, and zeroed out balances.

51.     Subsequent to her termination, Carrero was informed by a client of Defendant, Ms. Nidia Olaya, that Maria Gonzalez, a Personal Banker and Officer of Defendant's Rosemont Banking Center, told her that Carrero and Blasio were terminated for stealing money from Defendant.

52.     Ms. Gonzalez's defamatory remarks to Ms. Olaya regarding Carrero and Blasio were made within the scope of her employment with Defendant and during the actual performance of her job duties for Defendant.  Specifically, such comments were made to Ms. Olaya by Ms. Gonzalez as she was assisting her with her banking account.

53.     The statement made to Ms. Olaya by Ms. Gonzalez regarding Carrero and Blasio was knowingly false.

54.     Subsequent to Carrero's termination, Defendant attempted to deny an unemployment compensation claim filed by Carrero by claiming that Carrero was discharged for failing or refusing to adhere to a known company policy.

***Blasio***

55.     Blasio is a resident of Orlando, Orange County, Florida.

56.     Blasio was employed by Defendant, or its predecessors, from or about August 1998 until her termination in or about September 2008.

57.     During the last three years of her employment with Defendant, Blasio was employed as a full-time non-exempt, hourly Personal Banker at Defendant's Rosemont Banking Center.

58.     During the last three years of her employment, Blasio reported to Branch Manager Charles Phelps.

59.     Blasio, at all times material hereto, was an "employee" of Defendant within the meaning of the FMLA, 29 U.S.C. §§ 203(3) & 2611(3).

60.     In or about 2006, Blasio injured her back. Such injury required Blasio to seek and obtain intermittent FMLA leave from Defendant.

61.     Blasio's first leave of absence occurred on or about July 12, 2006 and concluded on August 7, 2006.

62.     In or about March 2008, Blasio reinjured her back. Blasio again sought and obtained intermittent FMLA leave due to her injury.

63.     Blasio initially went on FLA leave on March 10, 2008 and returned to work on March 27, 2008.

64.     Blasio again went on FMLA leave on April 5, 2008 and did not return to work until April 21, 2008.

65.     Despite being out on intermittent FMLA, Blasio's manager, Charles Phelps did not ever prorate Blasio's assigned performance goals.

66.     Due to her intermittent FMLA leave, Blasio could not achieve or attain each goal assigned to her by Charles Phelps.

67.     In fact, following her return from intermittent FMLA leave, Blasio was disciplined on multiple occasions for not achieving or attaining her assigned goals.

68.     On May 16, 2008, Mr. Phelps issued Blasio a written performance counseling for failing to meet goals. Notably, such discipline corresponded with time in which Blasio was out on FMLA leave.

69.     On July 22, 2008 and August 18, 2008, Mr. Phelps again issued Blasio written performance counselings for failing to meet goals. While Blasio did not take intermittent

FMLA leave during these times, other Personal Bankers such as Maria Gonzalez and John Tyler Weyland, upon information and belief, who had not taken FMLA leave, were not written up for similarly failing to meet assigned goals.

70.     Upon information and belief, Mr. Phelps assisted others, including Maria Gonzalez, with the achievement of her goals by assigning her accounts which had been opened by customers even in her absence.

71.     Upon information and belief, Mr. Phelps did not like when employees missed time due to FMLA qualifying reasons or due to disability. For example, when Robert (last name unknown), a Personal Banker and co-worker of Blasio, was missing work due to such a qualifying reason, Mr. Phelps asked Blasio, to the effect, if she knew any "dirt" on Robert because he needed to fire someone.

72.     In or about September 2008, Blasio was terminated by Defendant. Specifically, Blasio was terminated for negotiating a $3,000.00 check for a customer against a third-party account.

73.     Upon information and belief, Blasio's exercise of FMLA rights were held against her when Defendant decided to terminate her employment.

74.     Other employees such as Mr. Phelps and Maria Gonzalez were not terminated even though they engaged in violations of Company policies and procedure.

75.     For example, neither Mr. Phelps nor Ms. Gonzalez were terminated when they engaged in a series of "cutting and pasting" of client signatures.

76.     Additionally, Mr. Phelps was not terminated even though he, among other things, had always approved of the actions for which Blasio and Carrero were terminated, cashed

checks against third-party accounts, used Branch funds to credit accounts, improperly assigned matters to the Branch's general ledger, and zeroed out balances.

77.     Subsequent to her termination, Blasio was informed by Ms. Nikadena Santonino, a personal and business client of Defendant, that Charles Phelps informed Ms. Santonino in or about mid-September 2008 that Blasio was terminated because she stole money from Defendant. The Unsworn Declaration of Ms. Santonino describing the details of her conversation with Mr. Phelps subsequent to the termination of Blasio is attached hereto as Exhibit A.

78.     Mr. Phelps' defamatory remark regarding Blasio was made within the scope of his employment with Defendant and during the actual performance of his job duties for Defendant. Specifically, such comment was made to Ms. Santonino as he was assisting her with her banking accounts.

79.     Mr. Phelps' statement to Ms. Santonino regarding Blasio was knowingly false and based solely on unsubstantiated allegations.

**Named Plaintiff's FLSA Allegations**

80.     Named Plaintiffs are filing this collective action on behalf of themselves and other similarly situated current and former Bank of America employees.

81.     Named Plaintiffs were employed by Bank of America for a minimum of three years preceding their terminations in early September 2008.

82.     During the better part of the three years preceding their terminations, Named Plaintiffs were employed by Bank of America at its Rosemont Banking Center as full-time, hourly Personal Bankers.

83.     As Personal Bankers, the Named Plaintiffs were primarily responsible for offering and selling financial products and services to both consumer and small business customers.  Such tasks included, among other things, the opening of deposit accounts, taking loan applications, handling customer service requests.

84.     Until    or    about    2007,    Named    Plaintiffs    completed written timesheets at the end of each week to record their hours worked.

85.     Named Plaintiffs were instructed not to record all hours worked, even if they worked beyond forty (40) hours in a workweek.

86.     Named Plaintiffs generally did not record more than forty (40) hours in any workweek, as they were told that overtime was prohibited and would not be paid.

87.     To encourage employees not to report overtime hours, Branch Manager Charles Phelps permitted those employees who worked on Saturdays to receive days off as "comp time."

88.     On occasion, Branch Manager Charles Phelps and/or the Assistant Branch Manager, Jacqueline Salinas, would adjust the Named Plaintiffs' and other employees' timesheets.

89.     In or about 2007, Bank of America required Named Plaintiffs and others similarly situated to record their weekly hours via computer software.

90.     This computer software, however, contained pre-completed timesheets which reflected forty (40) hours of work inclusive of automatic deductions for lunch breaks.

91.     Because Named Plaintiffs were instructed that overtime was prohibited and would not be paid, they did not change the hours which were pre-filled out by Defendant's computer software even when they exceeded forty hours of work in a week.

92.    During the three year's preceding the termination of the Named Plaintiffs, as policy and practice to avoid the payment of overtime to Named Plaintiffs and others similarly situated, Bank of America would, inter alia, alter hours reported by employees; make automatic deductions for lunch periods even when employee lunches were interrupted by Bank of America work or not taken at all; fail to pay employees for other "off the clock" work which Bank of America was aware or should have been aware; instruct employees not to report all hours worked; pre-fill out timesheets, offer employees "comp time" for hours worked in lieu of overtime compensation; and refuse to pay employees for additional hours worked unless it was preapproved even when it knew or had reason to know employees performed work for the benefit of the Defendant.

### FLSA Collective Action Plaintiffs

93.    While position titles may vary among hourly Personal Bankers, each hourly Personal Banker performs the same or substantially the same primary job duties which were performed by the Named Plaintiffs.

94.    Named Plaintiffs brings this action on behalf of themselves and all others who are or were employed by Bank of America as hourly Personal Bankers, at any time within the three (3) years prior to this action's filing date through the date of the final disposition of this action (the "FLSA Period"), and who were permitted or suffered to work hours in excess of forty (40) hours per week without receiving overtime compensation as required by federal law (collectively, the "FLSA Collective Plaintiffs").

95.    At all times relevant hereto, Named Plaintiffs and the FLSA Collective Plaintiffs worked and/or continue to work for Bank of America as Personal Bankers during the FLSA Period.  Moreover, Named Plaintiffs and the FLSA Collective Plaintiffs worked and/or

continue to work hours in excess of forty (40) hours per week without receiving overtime compensation as required by federal law, and Bank of America has and continues to unlawfully and willfully refuse to pay Named Plaintiffs and the FLSA Collective Plaintiffs for such overtime work.

## COLLECTIVE ACTION ALLEGATIONS

96.     Under the provisions of the Fair Labor Standards Act ("FLSA"), employees are required to receive overtime wages at a rate of 1 and ½ times their normal hourly rate for hours they work in excess of forty during any particular workweek unless they qualify for an FLSA exemption.

97.     This collective action arises from an ongoing illegal and improper policy, plan, or procedure by Bank of America to systematically and willfully violate the provisions of the FLSA by knowingly and deliberately failing to pay those current and former employees employed as Personal Bankers all overtime wages legally due them under the FLSA.

98.     Named Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, allege that Bank of America knowingly and willfully violated, and continues to violate, the provisions of the FLSA by inter alia, alter hours reported by employees; make automatic deductions for lunch periods even when employee lunches were interrupted by Bank of America work or not taken at all; fail to pay employees for other "off the clock" work which Bank of America was aware or should have been aware; instruct employees not to report all hours worked; pre-fill out timesheets, offer employees "comp time" for hours worked in lieu of overtime compensation; and refuse to pay employees for additional hours worked unless it was preapproved even when it knew or had reason to know employees performed work for the benefit of the Defendant.

99.     Based on their job duties and status as hourly wage workers, none of the current and former Personal Bankers working for Bank of America qualifies for any of the overtime exemptions contained in the FLSA.

100.    Those employed as hourly Personal Bankers are or were responsible for offering and selling financial products and services to both consumer and small business customers.  Such tasks included, among other things, the opening of deposit accounts, taking loan applications, handling customer service requests.

101.    Named Plaintiffs and FLSA Collective Plaintiffs routinely work or worked in excess of forty (40) hours in any workweek.

102.    Upon information and belief, Bank of America willfully and illegally failed to pay hourly Personal Bankers for all hours worked.

103.    Upon information and belief, all decision(s) regarding whether or not to pay all overtime wages to Bank of America Personal Bankers was done with the knowledge of and at the direction of members of Bank of America's top level, centralized corporate management. This decision was applied uniformly and consistently across all regions of the country and to all areas of Bank of America's business operations employing Personal Bankers.

104.    Upon information and belief, Bank of America employs human resources personnel and legal counsel to ensure compliance with all applicable state and federal statutes, including the FLSA provision regarding payment of overtime wages.

105.    Bank of America knows or should have known that its former and current policies regarding payment of overtime wages as described herein violate the FLSA.

106.    The illegal policies and practices described herein are part of a centralized, nationwide policy, practice and scheme developed and orchestrated by the corporate

headquarters of Bank of America and applied uniformly and consistently to all current and former Personal Bankers no matter what geographical area, state or business organizational designation in which they work(ed).

107.   As an employer, Bank of America is responsible for the illegal conduct and policies described herein related to the failure to comply with the provisions of the FLSA for those current and former employees who served as Personal Bankers.

108.   As a result of the actions of Bank of America in not paying legally required overtime wages to current and former Personal Bankers, the Named Plaintiffs and all other similarly situated employees have suffered economic damages.

109.   The actions of Bank of America in deliberately failing to pay its Personal Bankers all overtime wages was done for the purpose of enriching and benefitting Bank of America.

110.   Pursuant to the provisions of 29 U.S.C. § 216(b), Named Plaintiffs seek to pursue an action on behalf of themselves and on behalf of FLSA Collective Plaintiffs during the FLSA Period.

111.   The Named Plaintiffs are similarly situated to the FLSA Collective Plaintiffs in that they have substantially similar job requirements and pay provisions, and are subject to the Defendant's common practices, policies, and/or plans.   Specifically, the Named Plaintiffs and the FLSA Collective Plaintiffs worked overtime hours, as defined by the applicable federal law, and are and have been entitled to premium compensation at one and one-half times their regular hourly rates ("overtime compensation") for those hours worked in excess of forty hours per week.   Nevertheless, Defendant has, in violation of the FLSA, willfully refused to pay

16

Named Plaintiffs and the FLSA Collective Plaintiffs the required overtime compensation for all overtime hours worked and have failed to keep accurate time records as required by the FLSA.

112.    The names and last addresses of all FLSA Collective Plaintiffs are available from Defendant, and notice of this lawsuit should be provided to these individuals via first class mail to the last address known to their employers as soon as possible so they can determine whether they should "opt in" to this lawsuit.

113.    Named Plaintiffs' consents to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b) are attached hereto as composite Exhibit A.

114.    Named Plaintiffs reserve the right to update and amend the individuals included in this action should Named Plaintiffs become aware of additional similarly situated current and former employees of Bank of America or if the definition of who qualifies as a similarly situated employee needs to be modified or updated during the course of these proceedings.

## <u>COUNT I</u>
## Violations of the FLSA, 29 U.S.C. § 201 *et seq.*

115.    All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

116.    Named Plaintiffs and the FLSA Collective Plaintiffs have been, and may still be, illegally and improperly paid wages in violation of the FLSA.

117.    Named Plaintiffs and the FLSA Collective Plaintiffs routinely worked, and may continue to work, in excess of forty (40) hours during their workweek without receiving all overtime compensation owed them in violation of the FLSA.

118.    Because Named Plaintiffs and the FLSA Collective Plaintiffs routinely performed work required for their jobs prior to clocking in, after clocking out, during lunch

17

breaks, and on some Saturdays, such work should have been counted toward the hours worked in each workweek.

119.   Additionally, Named Plaintiffs and the FLSA Collective Plaintiffs should have received overtime pay instead of "comp time."

120.   Named Plaintiffs and the FLSA Collective Plaintiffs were and continue to be legally entitled to receive overtime compensation at a rate of one and one-half (1 and ½) times their regular hourly wage for any hours worked in excess of forty hours in any workweek, as outlined in the FLSA.

121.   Named Plaintiffs and the FLSA Collective Plaintiffs do not qualify for any of the overtime wage exemptions outlined in the FLSA.

122.   The policy of Bank of America to not pay all overtime wages to Named Plaintiffs and the FLSA Collective Plaintiffs, as previously outlined, violates the provisions of the FLSA and was and continues to be a willful act.

123.   As a result of the illegal and improper policy, practice, or procedure of Bank of America regarding the payment of overtime wages as previously outlined, Named Plaintiffs and the FLSA Collective Plaintiffs have suffered economic damages in an amount to be proved at trial.

124.   The policy of Bank of America to not pay all overtime wages to Named Plaintiffs and FLSA Collective Plaintiffs was and is willful entitling Named Plaintiffs and the FLSA Collective Plaintiffs to recover damages and collect overtime wages for the three years preceding the filing of this action or their joining of this collective action as outlined in the FLSA and 29 U.S.C. § 255(a).

125.    Bank of America is also liable to Named Plaintiffs and the FLSA Collective Plaintiffs for damages as provided for under all applicable statues including liquidated damages in an amount equal to their damages and their reasonable attorneys' fees and costs.

126.    WHEREFORE, Named Plaintiffs request that this court enter judgment in their favor and against the Defendant as follows:

a.  Declare and certify that this action can proceed as a collective action on behalf of Named Plaintiffs and the FLSA Collective Plaintiffs;

b.  That because there is a statute of limitations associated with collection of damages under the FLSA, this court should allow delivery of notice to the FLSA Collective Plaintiffs as soon as possible informing them of the opportunity to join or "opt in" to this collective action by filing consent to join forms with the Court;

c.  Declare that Named Plaintiffs and the FLSA Collective Plaintiffs who opt-in to this collective action are legally entitled to collect overtime wages as outlined in the FLSA and that the policy of Bank of America to not pay all overtime wages to Named Plaintiffs and the FLSA Collective Plaintiffs was, and continues to be, illegal and improper and in violation of the provision of the FLSA;

d.  Declare that the actions of Bank of America in failing to pay all overtime wages as previously outlined were willful and that a three year statute of limitations should apply for Named Plaintiffs and all those FLSA Collective Plaintiffs who opt-in to this collective action for collecting the overtime wages properly due them from Bank of America;

e.  Enter a judgment against Bank of America in an amount to be proved at trial as compensation to Named Plaintiffs and the FLSA Collective Plaintiffs who opt-in to this

collective action for the overtime wages that Bank of America illegally and improperly withheld in violation of the FLSA;

f.   Declare that Named Plaintiffs and the FLSA Collective Plaintiffs are entitled to collect liquidated damages equal to the amount of their actual damages;

g.   Award Named Plaintiffs and the FLSA Collective Plaintiffs who opt-in to this collective action interest at the highest rate allowable on their unpaid overtime wages from the time that Bank of America was legally obligated to pay those overtime wages;

h.   Award Named Plaintiffs and all those similarly situated who opt-in to this collective action prejudgment interest on all liquidated sums awarded at the highest legal rate allowable;

i.   Award Named Plaintiffs and the FLSA Collective Plaintiffs who opt-in to this collective action interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

j.   ward Named Plaintiffs and the FLSA Collective Plaintiffs who opt-in to this collective action their reasonable attorneys' fees, expenses and costs;

k.   Order that Bank of America will comply with the provisions of 29 U.S.C. § 215(a)(3) regarding the prohibition of punitive action and retaliation against any current or former Bank of America employee for participation in this action either as Named Plaintiffs or as a FLSA Collective Plaintiffs who opted in to this collective action;

l.   Retain jurisdiction over this action to ensure full compliance with the Court's orders and require Bank of America to file such reports as the Court deems necessary to evaluate such compliance; and

m. For such other and further relief as this Court deems proper and just under the circumstances.

**COUNT II**
**Interference, Restraint, and Denial of FMLA Rights by Defendant against Carrero in Violation of 29 U.S.C. § 2615**

127.    Carrero incorporates paragraphs 1-95 as if fully realleged herein.

128.    Title 29 U.S.C. § 2615 provides that it shall be unlawful for any employer to interfere with, restrain or deny the exercise of or attempt to exercise, any right provided under this Title.

129.    Title 29 U.S.C. § 2614 provides that any eligible employee who takes FMLA leave shall be entitled, on return from such leave, to be restored by the employer to the position of employment held by the employee when the leave commenced, or to be restored to an equivalent position with equivalent benefits, pay and other terms and conditions of employment.

130.    At all times pertinent to this action, Carrero was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2)(A).

131.    At all times pertinent to this action, Defendant was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

132.    Carrero at all times pertinent hereto, was entitled to take (12) weeks of leave under the FMLA to care for her son due to his serious health condition.

133.    Carrero engaged in protected activity under the FMLA when she requested and took leave to attain care and treatment for her son's serious health condition.

134.    Defendant violated 29 U.S.C. § 2615 by failing to reinstate Carrero to her position of employment held before the commencement of her leave by suspending and terminating her employment upon her attempt to return to work from FMLA leave.  Such actions

constitute the unlawful interference, restraint and denial of rights granted to Carrero pursuant to the FMLA.

135.   Defendant' violations of 29 U.S.C. § 2615 were done in bad faith and without reasonable grounds.  Carrero has suffered and will continue to suffer direct pecuniary losses as a result of Defendant's violations of the FMLA.

WHEREFORE, Carrero requests that this Court enter judgment in her favor and against the Defendant as follows:

a.  Statutory damages for lost wages, benefits, and other compensation, plus interest on such sum at the statutory rate, pursuant to 29 U.S.C. § 2617 (a)(1)(A)(ii);

b.  Additional liquidated damages in the amount directed by statute pursuant to 29 U.S.C. § 2617 (a)(1)(A)(iii);

c.  Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to 29 U.S.C. § 2617(a) (1)(B);

d.  Attorney's fees, expert witness fees, and costs of this action, pursuant to 29 U.S.C. § 2617(a)(3), and such other relief as this Court may deems just and proper.

## COUNT III
### Unlawful Retaliation by Defendant against Carrero for Exercising FMLA Rights in Violation Of 29 U.S.C. § 2615

136.   Carrero incorporates paragraphs 1-95 as if fully realleged herein.

137.   At all times pertinent to this action, Carrero was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2)(A).

138.   At all times pertinent to this action, Defendant was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

139. Carrero's son's condition constituted a "serious health condition." 29 U.S.C. § 2611(11).

140. Carrero at all times pertinent hereto, was entitled to take (12) weeks of leave under the FMLA to care for her son due to his serious health condition.

141. Carrero engaged in protected activity under the FMLA when she requested and took leave to attain care and treatment for her son's serious health condition.

142. Defendant took adverse actions against Carrero for exercising her rights under the FMLA by denying her requested promotional opportunities, transfers, unfairly placing her on suspension, and, ultimately terminating her employment.

143. A causal connection exists between Carrero exercising her rights under the FMLA and the adverse actions taken by Defendant.

144. Based on the foregoing, Defendant retaliated against Carrero for exercising her rights under the FMLA in violation of 29 U.S.C. § 2615.

145. Carrero has suffered and will continue to suffer direct pecuniary losses as a result of Defendant's violations of the FMLA.

WHEREFORE, Carrero requests that this Court enter judgment in her favor and against the Defendant as follows:

a. Statutory damages for lost wages, benefits, and other compensation, plus interest on such sum at the statutory rate, pursuant to 29 U.S.C. § 2617 (a)(1)(A)(ii);

b. Additional liquidated damages in the amount directed by statute pursuant to 29 U.S.C. § 2617 (a)(1)(A)(iii);

c. Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to 29 U.S.C. § 2617(a) (1)(B);

23

d.  Compensatory damages; and

e.  Attorney's fees, expert witness fees, and costs of this action, pursuant to 29 U.S.C.

2617(a)(3), and such other relief as this Court may deems just and proper.

## COUNT IV
### Unlawful Retaliation by Defendant against Blasio for Exercising Her FMLA Rights In Violation of 29 U.S.C. § 2615

146.  Blasio incorporates paragraphs 1-95 as if fully realleged herein.

147.  At all times pertinent to this action, Blasio was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2)(A).

148.  At all times pertinent to this action, Defendant was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

149.  Blasio's back condition constituted a "serious health condition." 29 U.S.C. §§ 2611(11).

150.  Blasio was under the continuous care of a physician. 29 U.S.C. § 2611(11)(B).

151.  Blasio at all times pertinent hereto, was entitled to take (12) weeks of leave under the FMLA due to her serious health condition, for which she needed intermittent leave.

152.  Blasio engaged in protected activity under the FMLA when she requested and took leave to attain care and treatment for her serious health condition.

153.  Defendant took adverse actions against Blasio for exercising her rights under the FMLA by subjecting her to discipline, failing to prorate her goals, denying her promotional opportunities, and, ultimately, terminating her employment.

154.    A causal connection exists between Blasio exercising her rights under the FMLA and the adverse actions taken by Defendant.

155.    Based on the foregoing, Defendant retaliated against Blasio for exercising her rights under the FMLA in violation of 29 U.S.C. § 2615.

Blasio has suffered and will continue to suffer direct pecuniary losses as a result of Defendant's violations of the FMLA.

WHEREFORE, Blasio requests that this Court enter judgment in her favor and against the Defendant as follows:

a.  Statutory damages for lost wages, benefits, and other compensation, plus interest on such sum at the statutory rate, pursuant to 29 U.S.C. 2617 (a)(1)(A)(ii);

b.  Additional liquidated damages in the amount directed by statute pursuant to 29 U.S.C. 2617 (a)(1)(A)(iii);

c.  Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to 29 U.S.C. 2617(a) (1)(B);

d.  Compensatory damages; and

e.  Attorney's fees, expert witness fees, and costs of this action, pursuant to 29 U.S.C. 2617(a)(3), and such other relief as this Court may deems just and proper.

## COUNT V
### Defamation *Per Se* of Carrero by Defendant

156.    Carrero incorporates paragraphs 1-95 as if fully realleged herein.

157.    In or about mid-September 2008, the Defendant, through its agent and employee, Maria Gonzalez, published a false statement about Carrero to Ms. Nidia Olaya, a customer of Defendant.

158.    Specifically, during Ms. Gonzalez's actual performance of her duties as a Personal Banker for Defendant. Ms. Gonzalez informed Ms. Olaya that Carrero and Blasio were terminated because they stole money from Defendant.

159.    These statements, and the alleged act that it embodies, are false, malicious, defamatory, and slanderous, and moreover, were published in complete disregard of their obviously harmful effect on the Carrero's reputation and good standing in this community.

160.    In addition, the words themselves have caused Carrero to be regarded with scorn, contempt, ridicule, and disrespect by her friends, neighbors, business associates, and family, and will continue to do so for the foreseeable future.

161.    As a direct and proximate result of this false, malicious, and libelous publication, the Carrero has lost the respect and trust of her friends, neighbors, business associates, and, in general, has lost her reputation and good standing in the community. The Carrero has also thereby been caused to suffer great mental anguish and torment, as well as loss of sleep, and continuing humiliation, shame, and embarrassment.

162.    Because these slanderous statements were published intentionally, maliciously, and with total disregard for its truth or falsity, or of its ultimate effect on the Carrero, the Defendant should also be assessed punitive damages in an amount commensurate with the maliciousness of the slander, and to deter any such slanderous publications in the future.

163.    As a proximate result of the slanderous charge made by the Defendant, the Carrero has lost her good reputation and good standing in the community. In addition, and also as a proximate result of this slanderous charge by the Defendant, Carrero has suffered mental anguish and torment, as well as humiliation and embarrassment, for which Carrero should be compensated by the Defendant.

26

164.   As a result of the intentional, wanton, and malicious nature of the Defendant's false and slanderous statement, Carrero also pleads for a punitive damage award to deter the Defendant from any such future actions.

WHEREFORE, Carrero demands judgment against the Defendant for:

a.   General and compensatory damages;

b.   Punitive damages;

c.   Costs of suit as incurred in this action; and

d.   For any other and further relief as this Honorable Court may deem appropriate.

### COUNT VI
**Defamation *Per Se* of Blasio by Defendant**

165.   Blasio incorporates paragraphs 1-95 as if fully realleged herein.

166.   In or about mid-September 2008, the Defendant, through its agent and employee, Maria Gonzalez, published a false statement about Carrero to Ms. Nidia Olaya, a customer of Defendant.

167.   Specifically, during Ms. Gonzalez's actual performance of her duties as a Personal Banker for Defendant, Ms. Gonzalez informed Ms. Olaya that Carrero and Blasio were terminated because they stole money from Defendant.

168.   In or about mid-September 2008, the Defendant, through its agent and employee, Charles Phelps, published a false statement about Blasio to Ms. Nikadena Santonino, a customer of Defendant.

169.   Specifically, during Mr. Phelps' actual performance of his duties as a Branch Manager for Defendant, Mr. Phelps informed Ms. Santonino that Blasio stole money from Defendant.

170.    The above-described statements, and the alleged act that it embodies, are false, malicious, defamatory, and slanderous, and moreover, were published in complete disregard of their obviously harmful effect on the Blasio's reputation and good standing in this community.

171.    In addition, the words themselves have caused Blasio to be regarded with scorn, contempt, ridicule, and disrespect by her friends, neighbors, business associates, and family, and will continue to do so for the foreseeable future.

172.    As a direct and proximate result of this false, malicious, and libelous publication, the Blasio has lost the respect and trust of her friends, neighbors, business associates, and, in general, has lost her reputation and good standing in the community. The Blasio has also thereby been caused to suffer great mental anguish and torment, as well as loss of sleep, and continuing humiliation, shame, and embarrassment.

173.    Because these slanderous statements were published intentionally, maliciously, and with total disregard for its truth or falsity, or of its ultimate effect on the Blasio, the Defendant should also be assessed punitive damages in an amount commensurate with the maliciousness of the slander, and to deter any such slanderous publications in the future.

174.    As a proximate result of the slanderous charge made by the Defendant, the Blasio has lost her good reputation and good standing in the community. In addition, and also as a proximate result of this slanderous charge by the Defendant, Blasio has suffered mental anguish and torment, as well as humiliation and embarrassment, for which Blasio should be compensated by the Defendant.

175.   As a result of the intentional, wanton, and malicious nature of the Defendant's false and slanderous statement, Blasio also pleads for a punitive damage award to deter the Defendant from any such future actions.

WHEREFORE, Blasio demands judgment against the Defendant for:

a.   General and compensatory damages;

b.   Punitive damages;

c.   Costs of suit as incurred in this action; and

d.   For any other and further relief as this Honorable Court may deem appropriate.

### DEMAND FOR JURY TRIAL

Named Plaintiffs, on behalf of themselves and others similarly situated, hereby demand a jury trial on all causes of action so triable.

Dated this 21st day of May, 2009.


Respectfully submitted,


Nathan A. McCoy
Florida Bar No. 067610

NATHAN A. MCCOY, P.A.
151 Lookout Place, Suite 210
Maitland, Florida 32751
Telephone:   (407) 644-2460
Facsimile:   (407) 644-2705
E-Mail: nathan@nmccoylaw.com

TRIAL COUNSEL for the Named Plaintiffs

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

|  |  |  |
|---|---|---|
| VICKY CARRERO and | ) | |
| MELISSA BLASIO, *individually and* | ) | |
| *on behalf of themselves* | ) | |
| *and all others similarly situated,* | ) | |
| | ) | Case No. _____ |
| Plaintiffs, | ) | |
| | ) | **COLLECTIVE ACTION** |
| vs. | ) | |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| *a foreign corporation,* | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## UNSWORN DECLARATION OF NIKADENA C. SANTONINO

1.   My name is Nikadena C. Santonino.

2.   I am 46 years old and a resident of Ocoee, Orange County, Florida.

3.   I am the co-owner of Junkyard Saloon, LLC ("Junkyard Saloon"), a Florida limited liability company, whose address is 6440 North Orange Blossom Trail, Orlando, Florida 32810.

4.   Junkyard Saloon is a customer of the Defendant, Bank of America, N.A. ("Defendant" or "Bank of America").

5.   Junkyard Saloon primarily uses Defendant's Rosemont Banking Center for its banking needs.

6.   I am familiar with the Named Plaintiffs, Ms. Vicky Carrero and Ms. Melissa Blasio in the above-captioned lawsuit, as they served as Personal Bankers for Defendant at its Rosemont Banking Center.

7.     When Ms. Carrero and Ms. Blasio were employed by Defendant, they often assisted me with both my personal and business banking needs.

8.     In or about mid-September 2008, I went to Defendant's Rosemont Banking Center to seek assistance regarding my business account.

9.     While I was there, I noticed that neither Ms. Carrero nor Ms. Blasio were working. I then requested the assistance of General Manager Charles Phelps.

10.    As Mr. Phelps began to assist me with questions I had regarding my bank accounts, I asked Mr. Phelps where the Named Plaintiffs were, as one or the other was typically available to assist me.

11.    In response to my question, Mr. Phelps informed me that Ms. Carrero and Ms. Blasio were no longer employed by Defendant.

12.    With regard to Ms. Blasio, Mr. Phelps specifically informed me that Ms. Blasio had been fired because she "stole" money from Defendant.

13.    I was shocked by Mr. Phelps' accusation against Ms. Blasio, and that he, as General Manager, would share such information with me.

14.    Mr. Phelps further suggested that Ms. Blasio acted inappropriately when she assisted me with my business account and that I was aware of such alleged inappropriate behavior.

15.    Mr. Phelps then refused to assist me any further and abruptly instructed me to take my business elsewhere and not come back.

16.    I have not been paid or given anything of value to make this statement.

2

Pursuant to 28 U.S.C. § 1776, I declare under penalty of perjury that the foregoing

is true and correct. Executed on this ⟋ /⟋⟋ date of April, 2009.

NIKADENA C. SANTONINO